

IFP/NO Sum

# DISTRICT COURT
## FOR THE WESTERN DISTRICT AT TACOMA

Christian Doscher,
Plaintiff

v.

HireRight Solutions, Inc,
Defendant

Complaint
And
Demand for Jury Trial

CV12 5491 BHS

## I. PRELIMINARY STATEMENT

Plaintiff's allegations are identical to those which survived HireRight's motion to dismiss in *Smith v. HireRight Solutions, Inc., No.CIV.A. 09-6007 (E.D. Pa.)* filed December 17, 2009. That District Court DENIED HireRight's Motion to Dismiss, finding that the wording of that complaint sufficiently alleged actionable harm. See, e.g., *Smith v. HireRight Solutions, Inc., 711 F. Supp. 2d 426 - Dist. Court, ED Pennsylvania 2010*. (HireRight has settled that case). Hence, where Plaintiff Doscher's allegations in the instant complaint mirror those in *Smith, supra*, such allegations should also not be dismissed.

In *Smith v. HireRight*, Plaintiff admitted to a criminal conviction, but the basis of the complaint was the tortiously redundant repeating of that single incident multiple times in a single background check report provided to Plaintiff's prospective employers by

1

HireRight. Although in the instant case, Plaintiff Doscher similarly alleges the tortiously redundant reporting of criminal convictions multiple needless times within a single background check report from HireRight, Plaintiff Doscher goes further and alleges that *he was never convicted of any of the charges within said background report generated by HireRight*. One case that is nearly directly on point is *Dalton v. Capital Associated Indus.*, 257 F. 3d 409 (4th Cir. 2001). Another case that may be on point is *Dennis v. BEH-1, LLC*, 504 F. 3d 892(9th Cir. 2007).

    Plaintiff brings this action because he has been the subject of prejudicial, misleading and inaccurate background reports performed by the Defendant and conveyed to employers. Defendant has adopted and maintained a policy and practice of duplicate reporting of criminal cases that make it appear to prospective employers that the applicant has more of a criminal record history than is actually the case. The prejudice caused by the duplicate reporting is exacerbated by Defendant's failure to notify the consumer contemporaneously of the fact that the duplicative criminal record information is being sent to the employer, and Defendant's failure to maintain strict procedures to assure that the information is complete and up-to-date. As a result, consumers who are entitled to receive copies of their credit files from Defendant pursuant to Section 1681k of the Federal Credit Reporting Act ('FCRA') are deprived of full disclosure, and unable to adequately verify and/or dispute the accuracy of the information that Defendants are selling to employers. Defendant's practice harms consumers seeking employment, by prejudicing their prospective employers with inaccurate and misleading information, and harms interstate commerce as a whole. See *Complaint, Smith v. HireRight*, supra, at 1, par. 1.

## II. JURISDICTION

This case involves questions of the Federal Credit Reporting Act. The FCRA expressly creates a private right of action for willful or negligent noncompliance with its requirements; §§ 1681n & o. *Gorman v. Wolpoff & Abramson, LLP, 552 F. 3d 1008 (9th 2009)*, citing *Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057, 1059 (9th Cir.2002)*. Such federal questions also give this Court original jurisdiction pursuant to 28 U.S.C. § 1331. The Court also has diversity jurisdiction under 28 U.S.C. § 1332(a), as the parties reside in different states and the amount in controversy is greater than $75,000.

## III. VENUE

Venue is proper under 29 USC § 1332 because some of the alleged harm occurred within Washington State and within this District.

## IV. PARTIES

Plaintiff Christian Doscher is an adult individual and citizen of Washington state, who resides at 2920 Ruddell Rd. SE # 2, Lacey WA 98503.

Defendant HireRight Solutions, Inc ('HireRight'), is a Delaware corporation with headquarters address being 5151 California Avenue, Irvine, CA 92617.

## V. FACTUAL ALLEGATIONS ON DEFENDANT'S PRACTICES AS A CONSUMER REPORTING AGENCY AND FURNISHER OF CONSUMER REPORTS FOR EMPLOYMENT PURPOSES.

1. At all times pertinent hereto, Defendant was a Consumer Reporting Agency ('CRA') as defined by section 1681a(f) of the FCRA as well as in RCW 19.182.

2. Among other things, the FCRA regulates the collection, maintenance, and disclosure of consumer credit report information by CRAs, including public record information.

3. Defendant maintains consumer files, which contain public record information concerning, among other things, the criminal record history of individuals.

4. Defendant sells such consumer files to potential employers wishing to investigate the criminal record history, or lack thereof, with regard to various job applicants. According to a HireRight press release from March 2009, the Defendant sells background reports to more than 28,000 businesses across the county.

5. When a CRA furnishes a consumer report for employment purpose, and compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment, the CRA, at the time the public record information is being reported by the CRA, together with the name and address of the person to whom such information is being reported.

6. A CRA is required to maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability ot obtain employment is reported, that it is complete and up-to-date.

7. A CRA is also required to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

8. Despite these clear and unambiguous requirements, Defendant neither notifies the consumer contemporaneously of the fact that public record information is being reported by the Defendant, nor do they utilize reasonable procedures designed to assure maximum possible accuracy. Based on upon a common policy and practice, Defendant regularly reports a single incident multiple times, so that the individual's criminal record history appears much more serious than it actually is.

9. Defendant's practice not only violates Washington law and FCRA as a matter of law, it exacts serious consequences on consumer job applicants and interstate commerce. When consumers have been reported as having criminal history records that are in excess of or otherwise appearing more adverse than the true history, they are undoubtedly viewed as less desirable job applicants and more likely not to be hired by the employers who pay Defendants to issue such reports.

10. Further, such consumers are prejudiced in their ability to adequately determine whether the information is being accurately reported. Pursuant to Defendant's practice, by the time the consumer is made aware of the inaccurate and duplicative reporting, it is too late to correct the information because it has already been sold to the employer by the Defendants and has formed the basis of a decision whether to hire the applicant.

11. Despite their duties to notify the consumer contemporaneously of the fact that the duplicative criminal and record information is being sent to the employer, to maintain strict procedures to assure that the information is complete and up-to-date, and to utilize

5

procedures designed to assure maximum possible accuracy of the information they sell to prospective employers, Defendant has nonetheless deliberately, willfully, intentionally, recklessly and negligently adopted a policy and practice that disregards these duties, in violation both of Washington's state CRA and the FCRA as well.

## VI. FACTUAL ALLEGATIONS ON THE EXPERIENCE OF THE PLAINTIFF

1. HireRight, according to publicly available documents, recently agreed to a multi-million dollar class-action settlement in the matter of *Smith v. HireRight*, supra, the case that contains the identical allegation of repeating criminal charges more than once in a single background report, as are now alleged by Plaintiff Doscher. Before the settlement occurred, lawyers for Plaintiff Smith had created a website informing others that if anybody with a potential claim against this Defendant do not wish to join the class-action, they can only preserve their individual claims by sending a letter to counsel demanding to "opt-out" of that litigation. I downloaded the pre-printed "opt-out" letter, printed and signed it, and sent it to the *Smith* lawyers before my time for doing so expired. I received no benefit of any kind from the *Smith v. HireRight* settlement.

2. In July of 2010, I applied for work via internet-based applications with three companies. Two of the applications asked whether I had ever been convicted of a crime in Washington state, to both of which I answered "no".

3. In the same month, when I called two of those employers back, both said they were rejecting my employment application for two reasons: (a) lying, since a background check given them by Defendant had revealed several criminal convictions in Washington

state, and (b) one too many truck accidents. Both employers specified, among others, the accident reported at the time I worked for JP Hunt. But I never worked for JP Hunt, so I could never have caused an accident while working for JB Hunt.

4. I received my first requested "DAC" report from Defendant in an envelope post-marked August 13, 2010 ('the 2010 DAC report').

5. This 2010 DAC report has two numbered sections, the first section comprises pages 1 through 12. The second section comprises pages 1 through 6. In the second section, pages 3 through 4, this DAC report says I was involved in an accident while working for motor-carrier "JB Hunt", to wit:

> "Equipment was involved in an occurrence or act that produced unintended injury, death, property damage of any type, or resulted in the equipment requiring a tow (other than mechanical breakdown) while assigned to the driver regardless of fault. Adverse information is reported for 7 years."

However, I was never employed by JB Hunt.

6. An unnumbered page in the 2010 DAC report signifies that HireRight has sent employment history information, criminal record history information, and "other." inquiries" to various employers. Although this page says the list of requesting employers will be provided "if available", the report nowhere names said requesting employers.

7. HireRight's website includes a statement that it does not report criminal history information until after it has performed a "thorough" background check:

> Criminal felony and misdemeanor searches help companies identify any potential unsavory applicants with past criminal behavior. Results indicating a criminal background are communicated in an easy to read format and are only reported once HireRight has conducted a thorough investigation.
> From http://www.HireRight.com/County-State-Federal-Criminal-Records.aspx

8. Page 3 in the first section of this report lists a 2003 criminal case of "simple assault" as "dismissed". This was the true disposition, but the Washington State Supreme Court says reporting of mere arrests, where there is no conviction, is probative of nothing

and so reporting such a thing anyway will have an adverse effect on the subject's employment prospects:

> Petitioners, however, offer persuasive evidence that misuse of arrest records by nonlaw enforcement personnel can seriously hamper or endanger the employment and educational opportunities of the arrestee. It appears that an arrest record in the world of commerce, as a practical matter, transmutes the legal presumption of innocence into one of guilt.«2» The stigmatization as an arrestee, petitioners contend, automatically closes the door to many job opportunities otherwise available to the nonarrested applicant. There is abundant evidence that the nonconvicted arrestee is subjected to substantial discriminatory sanctions in the job marketplace.
> ...The fact of arrest is probative of nothing. Nonetheless, I have discussed at some length the intrusions made into the private lives of job applicants caused by the divulgence of arrest records. There seems to be something drastically wrong with a societal attitude which imposes or precipitates social and economic sanctions upon an individual as the cost of social penitence and forgiveness when the subject is innocent of any conclusively ascertained and established social misconduct.
> Monroe v. Tielsch, 84 Wn.2d 217, 525 P.2d 250 (1974)<br>Citing Schware v. Board of Bar Examiners, 353 U.S. 232, 1 L. Ed. 2d 796, 77 S. Ct. 752 (1957)

9. On page 4 in the first section, this DAC report says the year 2000 "disposition" of charges of 4th Degree Assault, Thurston County Case No. 0-1-00232-1, was "guilty", however, I was never convicted of this charge.

10. Page 5 in the first section of this DAC report lists an arrest for both "assault of a child in the 4th degree" and "bail jumping", contra *Monroe v. Teilsch*, supra, because there was no conviction for either charge.

11. Page 6 in the first section of the 2010 DAC report shows a conviction in 2000 for "assault in the 4th degree", thus repeating the false information on page 4 of said report, the same type of injurious repetition of criminal history data that successfully withstood a motion to dismiss in *Smith v. HireRight, supra*. I was never convicted of this charge.

12. Page 7 in the first section of this DAC report lists a 2003 arrest for both "assault of a child in the 4th degree" and "bail jumping", hence repeating the information on page 5 of this DAC report, the same type of injurious repetition of criminal history data that successfully withstood a motion to dismiss in *Smith v. HireRight, supra*.

13. Page 8 in the first section of this DAC report lists a 2003 arrest for "simple assault", contra *Monroe v Teilsch*, supra, repeating the same information from page 3 of the same report, a charge I was never convicted of, the same type of injurious repetition of criminal history data that successfully withstood a motion to dismiss in *Smith v. HireRight, supra.*

14. Page 9 in the first section of this DAC report lists a 2003 felony charge of "assault of child in third degree" and misdemeanor charge of "bail jumping", hence repeating the information found on pages 5 and 7 of this same DAC report, the same type of injurious repetition of criminal history data that successfully withstood a motion to dismiss in *Smith v. HireRight, supra.*

15. On page 10 in the first section of this DAC report, there is listed a 2003 charge of "simple assault", hence, repeating the information on pages 3 and 8 of this same report, the same type of injurious repetition of criminal history data that successfully withstood a motion to dismiss in *Smith v. HireRight, supra.*

16. On page 11 in the first section of this DAC report, a description of a year 2000 offense is listed, hence, repeating the false conviction history previously found on pages 4 and 6 of this same report, the same type of injurious repetition of criminal history data that successfully withstood a motion to dismiss in *Smith v. HireRight, supra.* On page 4, the nature of that offense is revealed. On page 11, the same charge is described as "not specified by state", giving the false impression that there was some sort of different additional criminal case but which the State did not provide information for.

17. Page 11 of this 2010 DAC report contains a reference to a 1988 criminal case, but says the offense is "not specified by state", which was also inaccurate. This page

makes it appear that there was a conviction for an "offense" in 1988, however, I was never convicted of the charges from that 1988 criminal case, so it is reporting completely pointless and certainly prejudicial information contra *Monroe v. Teilsch, supra.*

18. I was in Shelton WA on unrelated business when I first read this 2010 DAC report. Reading it caused me emotional distress, the symptoms of which were shock, anger, upset, nervousness, embarrassment, frustration, anger, anxiety, humiliation, migraines, depression and insomnia, the last three of which have continued into the present.

19. I contacted HireRight from a pay phone in Shelton, WA between August and September of 2010 (as well as by letter), informing them that the 1988 unspecified conviction and the 2000 conviction for 4th degree assault, both contained in their background report on me, were false, and requested removal of these items.

20. The HireRight employee I spoke with at this time (a woman) clarified that HireRight also performs a check for updated employment and criminal history information immediately prior to sending the report to the requesting party.

21. I never received an answer to my request for deletion.

22. I received my second requested DAC report from HireRight in an envelope post-marked September 26, 2011 ('the 2011 DAC report').

23. This 2011 DAC report has several separately numbered sections of pages. The first section is pages 1-6. The second section is pages 1-2. The third section is pages 1-4.

24. The unnumbered introduction page states the following in a "Note" at the bottom:

> Note: Some of the attached reports may be labeled "20/20", "20/20 Insight", or a similar designation (collectively, "20/20" Reports"). HireRight no longer provides 20/20 Reports to our clients as a product offering. If HireRight previously provided 20/20 Reports about you to a client during the

timeframe for which you requested your records from HireRight, such disclosure will be noted on the attached Inquiry List. On the Inquiry List, entries in the customer column labeled "DAC Consumers," "DAC Services Test" or TISI/Ratbert" indicate records retrieved by HireRight for internal purposes – not report provided by HireRight to a third-party.

However, no inquiry list was attached.

25. On page 3 in the last section of this 2011 DAC report, there is repeated from the 2010 DAC report the erroneous conviction information concerning the year 2000 charge of 4th degree assault that had appeared in the 2010 DAC report, the same type of injurious repetition of criminal history data that successfully withstood a motion to dismiss in *Smith v. HireRight, supra.*. This single page TWICE refers to this charge as resulting in a conviction.

26. I was in Shelton, WA (i.e., Mason County) on unrelated business when I first read the 2011 DAC report. Upon reading it, I experienced the same symptoms of emotional distress as before; shock, anger, upset, nervousness, embarrassment, frustration, anger, anxiety, humiliation, migraines, depression and insomnia, the last three of which have continued into the present.

27. This 2011 report did not list the 2 employers who had previously confirmed to me that HireRight revealed to them several alleged criminal convictions, even though the last page of this report contains HireRight's legal acknowledgement that I have a right to know whether and to whom this DAC report was disseminated.

28. In January of 2012, I contacted HireRight by phone and letter again, asking them to remove the inaccurate references to the year 2000 criminal conviction for 4th Degree Assault contained in their background report on me.

29. I received a third requested DAC report in an envelope post-marked January 31, 2012 ('the 2012 DAC report').

30. This 2012 DAC report was prefaced with a letter explaining that it was in response to my January request for deletion of inaccurate criminal history. The letter said HireRight has amended its report to reflect that Case No. 00-1-000232-1 (the alleged conviction from year 2000) was removed because it was no longer reportable per State guidelines. <u>That is not true; the only available reason for deletion of that reference would have been the falsity of the reference itself.</u> In other words, this conviction was never reportable because it never existed in the first place. There are no Washington state guidelines that govern how long a CRA can report a non-existent criminal conviction.

31. Although this letter prefacing the 2011 DAC report said HireRight no longer provides a previous report called the "20/20 Insight" report, their 2012 DAC report is entitled "20/20 Insight".

## VII. FEDERAL CAUSES OF ACTION

Negligent and Willful violations of the Fair Credit Reporting Act (FCRA'):

    15 U.S.C. §§ 1681b

    §1681e(b)

    §1681i

    §1681k

    §§ 1681n & o

Willful violation of the FCRA:

    15 U.S.C. 1681n

## VIII.  STATE CAUSES OF ACTION

Count One:  Fraud (9 civil elements).
Count Two: Fraud by failure to disclose a material fact when under a duty to do so.
Count Three: Constructive Fraud by innocent misrepresentation.

RCW 19.182.080
(6) Except as provided in RCW 19.182.150, no consumer may bring an action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against a consumer reporting agency or a user of information, based on information disclosed under this section or RCW 19.182.070, except as to false information furnished with malice or willful intent to injure the consumer. Except as provided in RCW 19.182.150, no consumer may bring an action or proceeding against a person who provides information to a consumer reporting agency in the nature of defamation, invasion of privacy, or negligence for unintentional error. [1993 c 476 § 10.]

RCW 19.182.150
The legislature finds that the practices covered by this chapter are matters vitally affecting the public interest for the purpose of applying the consumer protection act, chapter 19.86 RCW. Violations of this chapter are not reasonable in relation to the development and preservation of business. A violation of this chapter is an unfair or deceptive act in trade or commerce and an unfair method of competition for the purpose of applying the consumer protection act, chapter 19.86 RCW. The burden of proof in an action alleging a violation of this chapter shall be by a preponderance of the evidence, and the applicable statute of limitation shall be as set forth in RCW 19.182.120. For purposes of a judgment awarded pursuant to an action by a consumer under chapter 19.86 RCW, the consumer shall be awarded actual damages and costs of the action together with reasonable attorney's fees as determined by the court. However, where there has been willful failure to comply with any requirement imposed under this chapter, the consumer shall be awarded actual damages, a monetary penalty of one thousand dollars, and the costs of the action together with reasonable attorneys' fees as determined by the court.
[1993 c 476 § 17.]


   Under RCW 19.182.080:
Count Four: Defamation
Count Five: Libel
Count Six: Slander
Count Seven: Invasion of Privacy
Count Eight: Negligence
Count Nine: False Information furnished with malice or willful intent to injure
Count Ten: Tortious interference with a business expectancy

## IX. PRAYER FOR RELIEF

Plaintiff Doscher demands $800,000 (Eight Hundred Thousand Dollars) in actual damages and an additional $1000 in awarded monetary penalty (RCW 19.182.150), plus his reasonable attorney fees and court costs. Plaintiff also demands an additional $300,000 in punitive damages as allowed under 15 U.S.C. § 1681n(a), *supra*.

I certify under penalty of perjury and the laws of the State of Washington that the facts alleged in this complaint are true and accurate to the best of my knowledge.

_____  6-4-12
Christian Doscher          Date
2920 Ruddell Rd. # 2
Lacey, WA. 98503
(360) – 491 – 4559